IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**TAMORA T.,**[1]

       Plaintiff,                               **Civ. No. 3:21-cv-1081-MC**

      v.                                         **OPINION AND ORDER**

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

       Defendant.

_____

**MCSHANE, Judge**:

      Plaintiff applied for benefits on February 8, 2019, ultimately alleging disability as of March 14, 2016. Tr. 14.[2] Following a hearing, an Administrative Law Judge ("ALJ") determined Plaintiff was not disabled under the Act. Tr. 14–28. Plaintiff alleges that the ALJ erred in assessing the opinion of Stephanie Culver, ND. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

      The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

*See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five–step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

Because Plaintiff filed her application after March 27, 2017, revised regulations regarding the evaluation of medical source opinions apply to her claim. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). The revised rules provide that the Social Security Administration will evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5); *see Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "Supportability" and "consistency" are the most important factors to be considered when evaluating the persuasiveness of medical opinions and, therefore, the ALJ is required to explain how both factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). Additionally, "[t]he ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020).

Here, the ALJ discussed Ms. Culver's opinions as to Plaintiff's mental limitations:

3 – OPINION AND ORDER

> In a statement dated July 7, 2020, Stephanie Culver, ND, stated the claimant has no limitations in understanding, remembering, or applying information, mild limitations in interacting with others, mild limitations in concentration, persistence or pace and moderate limitations in adapting or managing herself. The claimant can work appropriately with the public, coworkers and supervisors. The claimant is likely to be off task 10% of the typical workday from even a simple job and would be absent more than 4 days a week as a result of her impairments and/or treatment.
>
> Ms. Culver's assessment, particularly her ass[ment] of the claimant's absenteeism, is not found to be persuasive as it is not consistent or supported by the overall medical evidence record, including no psychiatric hospitalization except for one related to methamphetamine use, notes of the claimant's being active in group therapy, good mental status examinations with intact memory and concentration and appropriate behavior, and notes of improvement with medication and psychotherapeutic treatment.

Tr. 24–25 (internal citations omitted).

The ALJ's decision to give no weight to Ms. Culver's more restrictive limitations is supported by substantial evidence. *See Woods*, 32 F.4th at 787 (noting that under the new regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."). The conclusion that there is little evidence in the record that would support a finding that Plaintiff would miss more than four days each month due to her impairments is a rational one. Based on the Court's review of the record, there is no indication Plaintiff missed a single appointment due to her impairments in four years of records. In roughly 30 therapy sessions over approximately six months, Plaintiff missed two appointments. One absence was prearranged due to a conflict with another medical appointment. Tr. 965. The only other absence, on April 5, 2019, occurred when Plaintiff cancelled on the day of the appointment "due to having to work." Tr. 955. Similarly, the Court finds little evidence Plaintiff's impairments caused her to miss any of the several dozen medical appointments in the record. And the ALJ was correct in noting that while Plaintiff had been hospitalized for methamphetamine use, she had not been hospitalized for any mental impairment. The ALJ did not err in concluding Ms.

Culver's opinion that Plaintiff would miss more than four days each month lacked support in—i.e., was not consistent with—the overall record.

Additionally, the record certainly supports the ALJ's findings that Plaintiff was an active participant in her group therapy sessions. Nearly every session contains notes similar to those from Plaintiff's March 26, 2019 session: Plaintiff "was an active participant in the group discussion and processed well with other members." Tr. 945; *see also* Tr. 925, 927, 936, 938, 940, 950, 958, 967 (all noting Plaintiff was an "active participant"). Only notes from one session, on April 15, 2019, indicate Plaintiff did not participate much. Tr. 960.

Similarly, the record supports the ALJ's findings that Plaintiff's treatment notes indicate she seemed to respond to medication. On July 30, 2020—the same month Ms. Culver opined Plaintiff's mental impairments would cause Plaintiff to miss more than four days of work each month—Ms. Culver's treatment notes state: "Mood is better, little more cheery. The medication has made an improvement. She sees an increase in her stamina, wanting to do more things, more patience. Motivation is improved. . . . Energy is good. She has physical therapy is going well . . . . Mental health has improved that she feels she doesn't have many (or any) signs of illness." Tr. 1390.

The ALJ pointed to numerous notes from Plaintiff's therapy and mental status examinations indicating she had "intact memory and coherent thought processes," normal concentration, and presented "as pleasant and cooperative with normal mood and affect." Tr. 19 (citations omitted). Notes from an August 2, 2016, mental status examination indicate:

> She makes excellent eye contact. She is extremely pleasant, cooperative, and forthright. There are no abnormal movements noted. Her mood is 'pretty good.' Affect is full and of a wide range. Patient is appropriately tearful and also appropriately smiles. Thought process is generally organized, yet patient can be distractible, which is to be expected following trauma. Speech is regular rate, rhythm, and volume. . . . Patient is alert and oriented to name, date, place, President,

5 – OPINION AND ORDER

and situation. She can recall 3 items immediately, 2/3 items at 5-minute recall. The patient can spell the word 'world' forwards and backwards. She has difficulty with serial 7's yet can rapidly do serial 3's. Patient can list the months of the year backwards relatively quickly. . . . The patient appears to have good judgment and she has excellent insight into her history and steps moving forward.

Tr. 387-88.

Notably, this examination took place the day after Plaintiff was hospitalized with restraints after presenting with an "altered mental status . . . due to amphetamine use." Tr. 388. As noted above, "[c]onsistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). Here, the ALJ supported her conclusion that Ms. Culver's more restrictive limitations were not justified because such restrictions were inconsistent with the record as a whole.

> The ALJ next turned to Ms. Culver's opinion as to Plaintiff's physical limitations:
>
> In a statement dated July 8, 2020, Ms. Culver stated the claimant is likely to be off task 15% of the average workday and would be absent greater than four days per month. The claimant could frequently lift and/or carry 10 pounds and rarely lift 20 pounds and occasionally carry 20 pounds. The claimant could sit for 3 hours and stand/walk for 3 hours in an 8–hour workday and requires a sit/stand option as well as an opportunity to lie down or recline as needed every 1–2 hours. The claimant could occasionally reach and push/pull with the left upper extremity and frequently handle, finger and feel and rarely push/pull. The claimant could frequently use foot controls bilaterally. The claimant could occasionally climb stairs and ramps and rotate her head and neck and never climb ladders and scaffolds. She could rarely balance, stoop, kneel, crouch and crawl. Additionally, environmental limitations were noted. In treatment notes in 2020, Ms. Culver noted the claimant is unable to perform full or part–time work. She explained a part–time sedentary job might be possible, although the claimant would need additional commendations.
>
> Ms. Culver's assessment is not found to be persuasive as it is not consistent or supported by the overall medical evidence record, including imagine of the claimant's spine showing no herniations or significant stenosis, physical examination results demonstrating a normal gait and no strength or sensory deficits, no surgery recommended but conservative treatment recorded by the claimant's spine, improvements with medication and other therapies, successful carpal tunnel release surgery, and notes of the claimant chopping wood, remodeling, hiking, collecting cans and doing auto body work.

6 – OPINION AND ORDER

Tr. 25 (internal citations omitted).

Here too, the ALJ's decision to give little weight to Ms. Culver's more restrictive limitations is supported by substantial evidence. The ALJ first pointed to objective imaging results, which indicated "no herniations or significant stenosis." June 25, 2017 X-Rays indicated "Cervical alignment is within normal limits, except for minimal anterolisthesis of C3 on C4. No evidence of instability between flexion and extension positioning. Severe disc space narrowing at C6-7. . . . No acute abnormality." Tr. 337. In March 2019, doctors at OHSU's Orthopaedic Spine Center took X-Rays and an MRI of Plaintiff's spine. Tr. 769-70. X-Rays showed: "Trace reducible C2-C3 anterolisthesis. Trace Static C3-C5 multilevel anterolistheses. Moderate multilevel degenerative disc disease, most prominent at C6-C7." Tr. 769. The MRI revealed: "Mild spinal stenosis and marked bilateral neural foraminal compromise, C4-C5. Mild spinal stenosis and moderate bilateral neural foraminal compromise, C3-C4. Mild bilateral neural foraminal compromise without appreciable spinal stenosis, C6-C7." Tr. 398. Notes indicate that although Plaintiff had an abnormal physical exam, "Her MRI findings are inconsistent with her complaints of myelopathic symptoms." Tr. 770. A December 2019 MRI indicated "no significant change from 4/24/19. Redemonstration of mild spinal canal stenosis at the L2-3 and L4-5 levels and mild to moderate scattered neural foraminal stenoses[.]" Tr. 1267. The ALJ did not err in concluding Ms. Culver's opinion was not consistent with the objective imaging results.

Additionally, the ALJ reasonably concluded that Plaintiff's conservative treatment was inconsistent with Ms. Culver's more restrictive limitations. This too is supported by the record. In January 2019, Ms. Culver recommended that Plaintiff exercise. "Get some activity everyday—this can include walking, hiking, swimming, running, dancing or playing a sport. Try to get at least 30-60 minutes outside (or active indoors, such as at a gym) at least once daily." Tr. 602. Ms. Culver

also recommended physical therapy, and noted Plaintiff received some relief with injections. Tr. 1053 (noting that although Plaintiff had tightness in her back, she received relief from muscle relaxers and PIT treatments); Tr. 1070 ("Patient is responding well to PIT treatments with Dr. Culver and is noting pain reduction in her neck and shoulders."); Tr. 1076 ("She has noticed a change since starting the injections. Feels tight but feels like it's improving. Pain level is 5/10."); Tr. 1136 (noting that although Plaintiff experienced increased pain after recently tripping over a bucket, Plaintiff noticed improvement following treatment "a couple months ago."). And in August 2019, Plaintiff's neurologist recommended Plaintiff "continue conservative measures for back pain management."[3] Tr. 692. The ALJ did not err in contrasting Plaintiff's conservative treatment with Ms. Culver's opinion.

Relatedly, the ALJ noted Ms. Culver's opinion was not consistent with evidence in the record indicating Plaintiff was not as limited as alleged. Tr. 25. The month before offering her opinion, Ms. Culver noted Plaintiff was in pain after working with her partner trimming trees. Tr. 1336. Just days before offering her opinion, Ms. Culver noted Plaintiff's pain was 6/10 after Plaintiff had "been doing stump removal with her partner." Tr. 1348. A few weeks later, Ms. Culver noted, "Pain continued to be 4-5/10 severity after her last treatment 3 days ago however she has been helping her partner with stump grinding the past 2 days and pain has been 8-9/10 severity, including today." Tr. 1374. Similarly, during the same time period, Plaintiff's physical therapist noted Plaintiff reported "being sore from chopping wood this weekend." Tr. 1313.

When Plaintiff was hospitalized in August 2016 for drug induced delirium, Plaintiff reported "I was doing really good before this." Tr. 386. Plaintiff "denies anhedonia and takes great pleasure in a multitude of activities. . . . In her free time, patient likes to write poetry, paint, to go

---

[3] Notes from this exam indicate that although Plaintiff reported balance and gait issues, upon examination Plaintiff exhibited normal station and gait. "Walks on heels and walks on toes-normal. Tandem gait-normal." Tr. 690.

8 – OPINION AND ORDER

hiking and anything that is water–related." Tr. 386–87. Plaintiff's husband reported Plaintiff had been working with a neighbor "doing some remodeling for friends of his." Tr. 373.[4] Finally, therapy notes from May 2019 indicate Plaintiff was working at a friend's autobody shop detailing vehicles. Tr. 987.

The ALJ did not find Plaintiff did not suffer any limitations from her severe impairments. Rather, the ALJ found that despite her limitations, Plaintiff was capable of performing light work with several exceptions. The ALJ acknowledged Plaintiff's condition waxed and waned, but concluded she was not as limited as she claimed.[5] In doing so, the ALJ provided a thorough summary of the record as a whole and provided specific and legitimate reasons for concluding Ms. Culver's more restrictive limitations were entitled to little weight. Those reasons are supported by substantial evidence in the record.

## CONCLUSION

Because the ALJ's decision is free of legal error and supported by substantial evidence in the record, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 31st day of January, 2023.

/s/ Michael McShane
Michael J. McShane
United States District Judge

---

[4] Plaintiff's husband also reported Plaintiff "quit her job in March. She receives an annuity check every 5 years from a car accident she was in, in 1996. She received the check and decided to take some time off. He wonders if sitting at home all day, every day with their 5 dogs was getting to her." Tr. 375.
[5] Plaintiff does not challenge this finding.

9 – OPINION AND ORDER